**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | § | |
| *Plaintiff* | § | |
| | § | SA-23-CV-00333-XR |
| -vs- | § | |
| | § | |
| CESAR MEDELLIN, VICTOR HUGO | § | |
| GONZALEZ, DONATO CARDENAS JR., | § | |
| PALOS GARZA LOGISTICS, LLC, | § | |
| *Defendants* | § | |

## <u>ORDER</u>

On this date, the Court considered Defendants' joint motion to dismiss this action for failure to state a claim (ECF No. 39), Plaintiff's response (ECF No. 41), and Defendants' reply (ECF No. 42). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff Total Quality Logistics, LLC ("TQL"), a freight logistics and brokerage firm based in Ohio, brings this action for breach of contract and various business torts against three former employees in its San Antonio, Texas office—Cesar Medellin, Donato Cardenas, Jr., and Victor Hugo Gonzalez (together, the "Individual Defendants")—and their subsequent employer, Palos Garza Logistics, LLC ("PGL"). ECF No. 35 ¶¶ 3–6.

Defendant Medellin worked at TQL from September 21, 2020 to March 15, 2022, in the positions of Mexico Logistics Coordinator II and Mexico Logistics Coordinator Captain. *Id.* ¶ 23. Defendant Cardenas worked at TQL from December 14, 2020 to November 16, 2021, as a Mexico Operations Specialist. *Id.* ¶ 40. Defendant Gonzalez worked at TQL from February 22, 2021 to March 10, 2022, as a Logistics Account Executive Trainee, a Logistics Account Executive, and a Mexico Account Representative Trainee. *Id.* ¶ 32. The Individual Defendants all served on the Mexico Program team, which coordinated a network of reliable motor carriers to move goods

across the Mexico border for a specific high-volume customer ("Key Customer"). *Id.* ¶¶ 48, 50.

Defendants Medellin and Cardenas were directly involved in building out and managing a reliable

program of shipping goods for the Key Customer. *Id.* ¶ 50.

As a prerequisite to their employment with TQL, all three Individual Defendants signed an

Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement. *See* ECF No. 36-1

(Medellin Employee Agreement); ECF No. 36-2 (Gonzalez Employee Agreement); ECF No. 36-

3 (Cardenas Employee Agreement). Each employment agreement contained a number of

restrictive covenants (together, the "Restrictive Covenants"), including a:

(1)     "**Non-Compete Provision**," barring employees from participating in "any
        transportation intermediary business" or from being employed by "any Competing
        Business," which is defined as "any person, firm, corporation, or entity that is
        engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or
        supply-chain management services anywhere in the Continental United States";

(2)     "**Confidentiality Provision**," which prohibits employees from using confidential
        information[1] "for any purpose, or publish, copy, disclose, or communicate to any
        individual, firm, corporation, or other business entity other than TQL";

(3)     "**Non-Solicitation Provision**," which prohibits employees from "directly or
        indirectly, solicit[ing] any Customer, Motor Carrier, client, consultant, supplier,
        vendor, lessee, or lessor, or tak[ing] any action, to divert business from TQL"; and

(4)     "**Non-Recruitment Provision**," barring employees from "directly or indirectly
        employ, recruit, solicit, or assist others in employing, recruiting, or soliciting"
        individuals who were employed by TQL within the previous 12 months.

*See* ECF Nos. 36-1, 36-2, 36-3 at 3–4. These Restrictive Covenants bound employees "during the

course of his or her employment . . . and for a period of one (1) year after termination or cessation

of Employee's employment for any reason," with the exception of the Confidentiality Provision

---

[1] The Individual Defendants' employment contracts defined "Confidential Information" as "confidential proprietary information," which included, *inter alia,* "its operating policies and procedures…information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers…contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors…Customer lists and Motor Carrier lists including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets..." ECF No. 36-1, 36-2, 36-3 at 1–2.

which restricted disclosure "at any time during the course of his or her employment by TQL, and at all times thereafter." *Id.* The Individual Defendants were also subject to workplace policies intended to secure TQL's confidential information, including internal controls that prevented employees from downloading or printing certain information, requiring "constantly changing" passwords. ECF No. 35 ¶¶ 19, 65.

In exchange for their agreement to these restrictions, the Individual Defendants received ongoing employment, training, and access to confidential information to support their professional development. *Id.* ¶¶ 64, 65, 74, 75, 84, 52. This information included, *inter alia*, TQL's rates, its customer and carrier contacts, its carrier qualifications and contractual terms, training on its Mexico cross-border operations, and the spread of each shipment on behalf of the Key Customer in a "specific niche market" involving a "high risk" shipping lane to Mexico. *Id.* ¶¶ 27, 48–49, 51, 61.

TQL was retained to move goods across the Mexico border for the Key Customer by PGL. *Id.* ¶ 48. PGL functions as both a customer and a competitor of TQL. *Id.* ¶ 46. For some of its clients—including, until recently—the Key Customer, PGL operates as a fourth-party logistics provider, meaning that it "arranges and manages the entire supply chain for a company, from transporting goods to shipping customer orders." *Id.* ¶ 45. In this capacity, PGL acts as a middleman between its customers in certain market segments and other supply chain companies, such as TQL. *Id.* ¶ 46. To the extent that PGL offers in-house freight logistics services to clients directly, however, it functions in a similar role to TQL in the marketplace as a third-party logistics provider. *Id.* ¶ 47.

TQL developed a network of reliable motor carriers to assist the Key Customer in moving goods across the Mexico border. *Id.* ¶ 50. This high-risk shipping lane required careful

management to avoid suffering loss of product. *Id.* ¶ 49. In managing the shipping lane, TQL received loads through PGL for the Key Customer, but TQL did not share information regarding its rates, the specific motor carriers it used, its process for qualifying carriers, its agreements with motor carriers, or the spread used for each shipment. *Id.* ¶ 51. This information was not readily obtainable by PGL or other competitors. *Id.* ¶ 52.

PGL, in an effort to obtain the work performed by TQL for the Key Customer, allegedly hired away employees from TQL's Mexico Program and recreated the program in-house. *Id.* ¶ 54. PGL had been working directly with Defendants Medellin and Cardenas to service and facilitate the Key Customer's logistics needs during their tenure at TQL. *Id.* ¶ 55. By March 2022, PGL had successfully recruited the three Individual Defendants away from TQL, causing an immediate impact on TQL's operations and its relationship with the Key Customer. *Id.* ¶ 56.

After PGL hired the Individual Defendants, the Defendants collectively solicited motor carriers that had serviced the Key Customer account through TQL to provide those same services through PGL. *Id.* ¶ 57. These solicitations resulted in at least three of TQL's key motor carrier relationships being transitioned in-house to PGL. *Id.* ¶ 57. Defendant Medellin facilitated these solicitations by using "the vast amount of information he retained and declined to return to TQL after his departure, including TQL rates for these sensitive lanes, rate confirmations, [and] points of contacts for clients and carriers." *Id.* ¶ 58. The Confidential Information obtained by the Individual Defendants while working at TQL provided them with "a blue print to recreate the TQL model at PGL on an accelerated basis *Id.* ¶ 58.

In March 2022, TQL first heard of Defendant Medellin attempting to solicit motor carriers running the Key Customer's freight. *Id.* ¶ 59. TQL's suspicions were confirmed when the Key Customer inadvertently emailed a comprehensive report of the 2023 load list for Mexico to

Defendant Medellin's former TQL email address. *Id.* ¶ 61. This report revealed a shift in loads that otherwise would have run through TQL to PGL, as well as the use of TQL's motor carrier relationships to move those loads. *Id.* ¶ 61.

Plaintiff originally filed suit against the Individual Defendants in the Court of Common Pleas, Clermont County, Ohio on April 7, 2022, alleging several state-law tort claims against the Individual Defendants, who then removed the case to the Southern District of Ohio on diversity grounds. ECF No. 1-1 at 3–16; ECF No. 1. On March 17, 2023, the case was transferred to the San Antonio Division of the Western District of Texas and assigned to the Undersigned Judge. ECF Nos. 14, 15. In June 2023, Plaintiff filed an amended complaint (ECF No. 31), adding claims against PGL, followed by a second amended complaint ("SAC") (ECF No. 35), the operative pleading, which cured certain jurisdictional defects.

Plaintiff asserts claims for breach of contract against the Individual Defendants (Counts 1–3); claims for violations of the Texas Uniform Trade Secrets Act ("TUTSA") (Count 4), and for tortious interference with "existing and prospective" business relationships (Count 5) against all Defendants; and a claim for tortious interference with existing contracts against PGL only (Count 6). ECF No. 35.[2]

Defendants have filed a joint motion to dismiss the SAC, arguing, among other things, that (1) the Non-Compete Provision is unreasonably broad and has otherwise expired; (2) Plaintiff's alleged "trade secrets" are not protected under TUTSA; and (3) because Plaintiff's claims are premised on the use of trade secrets, Plaintiff's claims sounding in tortious interference are preempted by TUTSA. ECF No. 39. The Court addresses each argument in turn.

---

[2] The SAC also includes a claim for unjust enrichment (Count 7), which Plaintiff has voluntarily withdrawn. ECF No. 41 at 19-20.

## DISCUSSION

### I.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## II.    Analysis

Although the relevant employment agreements provide that the contracts "shall be interpreted and enforced under the laws of the State of Ohio," ECF Nos. 36-1, 36-2, 36-3 at 7,[3] the parties have agreed that Texas law governs this dispute, including Plaintiff's breach-of-contract and trade-secret claims, *see* ECF No. 44.[4] Accordingly, the Court will analyze Plaintiff's claims and the parties' arguments under Texas law. *See DeWolff, Boberg & Assocs. v. Pethick*, 20-CV-3649-L, 2022 WL 4589161, at *9 (N.D. Tex. Sept. 29, 2022) ("As the parties both agree that Texas law applies, the court's analysis will also apply Texas law.").

### 1.    Breach-of-Contract Claims Against Medellin, Gonzalez, and Cardenas (Counts 1–3)

In the SAC, Plaintiff asserts that the Individual Defendants signed valid and legally enforceable employment contracts and that they breached the contracts' Restrictive Covenants by recruiting TQL's employees and customers to PGL using TQL's confidential information. ECF No. 35 ¶¶ 64, 68, 70, 74, 80, 84.[5]

---

[3] Page numbers in citations to the record refer to PDF page numbers as the document was filed on CM/ECF, which are not necessarily the same as the page numbers in the underlying documents.

[4] Both parties further acknowledge that the Texas and Ohio trade-secret statutes are substantially similar. ECF No. 39 at 9; ECF No. 41 at 12. The Fifth Circuit has held that if the laws of the states do not conflict, then no choice-of-law analysis is necessary, and courts "simply apply the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

[5] On page 17 of the SAC, the paragraphs cease to proceed numerically, jumping from 84 back to 52 without explanation. ECF No. 35 at 17. The Court cites to the paragraph numbers as written in Plaintiff's SAC despite this error.

In Texas, a claim for breach of contract requires, "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.— Houston [14th Dist.] 2005, pet. denied)).

Plaintiff has properly pled each of the elements of a claim for breach of contract. TQL alleges that the Individual Defendants agreed to the Restrictive Covenants, including the Non-Compete Provision precluding them from performing a similar service for a competitor, in exchange for ongoing employment, training, and access to confidential information. ECF No. 35 ¶¶ 64–65, 74–75, 84, 52. Each Individual Defendant allegedly breached the Non-Compete Provision by joining PGL within one year of their employment with TQL and redirecting work previously performed by TQL to PGL. *Id.* ¶¶ 61–62, 66, 76, 53. These pleadings are sufficient to allege a breach-of-contract claim at the 12(b)(6) stage.

Nonetheless, Defendants argue that the Non-Compete Provision is unenforceable because it is an unreasonable restraint on trade and has by its terms expired.[6] Under Texas law, a non-compete is enforceable "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Delta Fuel Co., Inc. v. Taylor*, No. MO:18-CV-00184-DC, 2019 WL 13159879, at *3–4 (W.D. Tex. Mar. 22, 2019) (citing TEX. BUS. & COM. CODE § 15.50). Section 15.51 of the Texas Business and Commerce Code then requires courts "to reform covenants found to be unreasonable to time, geographic area, or scope of activity." *D'Onofrio v. Vacation Publs., Inc.*, 888 F.3d 197, 212 (5th Cir. 2018).

---

[6] Defendant does not appear to challenge Plaintiff's claims for breach of the Non-Solicitation Provision or Non-Recruitment Provision.

Defendants challenge the Non-Compete Provision as unreasonably broad in the scope of activity it restrains, arguing that it improperly bars Defendants from accepting employment in any capacity with any competing business in TQL's industry. ECF No. 39 at 5. Specifically, the Non-Compete Provision bars the Individual Defendants from participating in "any transportation intermediary business" or from being employed by "any Competing Business," which is in turn defined as "any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States." *See* ECF Nos. 36-1, 36-2, 36-3 at 5–6. Defendants argue that this definition of "Competing Business" amounts to a prohibited "industry-wide restriction" on employment. *D'Onofrio*, 888 F.3d at 212.

Although the challenged definitions do appear to be quite broad, at the pleading stage, the Court "does not decide whether the non-compete covenant could or should be reformed and whether [p]laintiff could recover against [d]efendant for the breach of contract if the non-compete covenant were reformed." *DeWolff, Boberg & Assocs. v. Clark*, No. 3:22-CV-2489-K, 2023 WL 5437665, at *3 (N.D. Tex. Aug. 23, 2023); *Pethick*, 2022 WL 4589161, at *9 (reserving "whether or how the covenants can or should be reformed" for summary judgment). Moreover, overly broad non-compete agreements do not "alone [] warrant a motion to dismiss as it does not indicate that [the p]laintiff failed to state a claim that is plausible on its face." *Delta Fuel Co., Inc.*, No. MO:18-CV-00184-DC, 2019 WL 13159879, at *5 (W.D. Tex. Mar. 22, 2019).

Defendants also contend that Plaintiff cannot seek reformation or injunctive relief as to the Non-Compete Provision because it has expired. ECF No. 39 at 7–8. Absent tolling, the Non-Compete Provision applies for a "period of one (1) year after termination or cessation of [each] Employee's employment for any reason." ECF Nos. 36-1, 36-2, 36-3 at 4. It further provides,

however, that the "running of the one (1) year set forth in this Paragraph shall be tolled during any period during which Employee violates any provision of this agreement." ECF Nos. 36-1, 36-2, 36-3 at 5.

Defendants assert that, because all three Individual Defendants left TQL well over a year ago—Medellin on March 15, 2022, Gonzalez on March 10, 2022, and Cardenas on November 16, 2021—their future work for PGL is beyond the purview of the Non-Compete Provision. ECF No. 35 ¶¶ 20, 29, 37. The Individual Defendants do not dispute that they began working in complimentary roles at PGL by the end of March 2022, well within the one-year non-compete period, or that they continue to work for PGL in this allegedly violative capacity to this day. Instead, they argue that the tolling clause is unenforceable so long after the expiration of the non-compete period. Again, however, the question of whether the covenants survive due to a tolling provision is "a fact issue ill-suited for a motion to dismiss." *EHO360, LLC v. Opalich,* No. 3:21-CV-0724-B, 2021 WL 3134304, at *17–18 (N.D. Tex. Jul. 23, 2021) (finding that because the court "lacks the evidence and briefing necessary to determine whether the covenants were tolled," plaintiff's breach-of-contract claim premised on non-solicitation and noncompete provisions should survive at the 12(b)(6) stage). The Court therefore denies Defendants' motion to dismiss on this basis.[7]

Having taken the well-pleaded facts as true and viewing those in the light most favorable to Plaintiff, the Court **DENIES** the motion to dismiss Plaintiff's breach-of-contract claims against Individual Defendants (Counts 1–3).

---

[7] Defendant also asserts that Texas law "does not provide for recovery of attorney's fees for breach of non-compete." ECF No. 41 at 5–6. Although the Court agrees with this assessment, it declines to dismiss Plaintiff's request for attorney's fees at this stage because Plaintiff may be able to recover to attorney's fees in connection with its breach-of-confidentiality claim. *See NuVaise, Inc. v. Lewis,* No. A-12-CA-1156-SS, 2014 WL 12873101, at *6 (W.D. Tex. Oct. 23, 2014) (finding that section 15.51 of the Texas Business and Commerce Code precludes an employer from recovering attorney's fees for claims of breach of non-competition and non-solicitation, but allows for recovery on a breach-of-non-disclosure claim).

**2. Misappropriation of Trade Secrets Against All Defendants (Count 4)**

Plaintiff asserts claims for misappropriation of trade secrets under TUTSA, which provides the exclusive civil remedy for trade-secret claims in Texas aside from those sounding in contract. *See* ECF No. 35 at 19; TEX. CIV. PRAC. & REM. CODE § 134A.007.

To prevail on a claim under TUTSA, a plaintiff must prove "(1) ownership of a trade secret; (2) misappropriation of the trade secret; and (3) an injury, if the plaintiff is seeking damages." *Pethick*, 2022 WL 4589161, at *5 (quoting *Retail Servs. WIS Corp. v. Crossmark, Inc.*, No. 5-20-00937-CV, 2021 WL 1747033, at *8 (Tex. App.—Dallas May 4, 2021, pet. denied)). Defendants assert that Plaintiff has failed to identify a "trade secret" or plead facts sufficient to establish a "misappropriation" of the alleged trade secrets. ECF No. 39 at 13. For the reasons explained below, Defendants' arguments are unpersuasive.

*a. Ownership of a Trade Secret*

TUTSA defines a "trade secret" as:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]

TEX. CIV. PRAC. & REM. CODE § 134A.002(6). To determine whether a trade secret exists, Texas courts weigh six factors "in the context of the surrounding circumstances":

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of the measures taken . . . to guard the secrecy of the information; (4) the value of the information to [the person claiming the trade secret] and to his competitors; (5) the amount of effort or money expended by [the person claiming the trade secret] in developing the information;

[and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Nova Consulting Group, Inc. Eng'g Consulting Servs., Ltd.,* 290 F. App'x 727, 734 (5th Cir. 2008).

Plaintiff asserts that the Individual Defendants misappropriated, *inter alia*, TQL rate information, contact information for customers and carriers, specific motor carriers used, how TQL qualified carriers, terms of TQL's agreements with motor carriers, training relating to its Mexico cross-border operations, and the spread of each shipment related to a "specific niche market" involving a "high risk" shipping lane to Mexico. ECF No. 35 ¶¶ 27, 48–49, 51, 61. Defendants assert that none of the information identified in the SAC is protected under TUTSA because this information is "generic business information" or, with respect to the "Key Customer" information, is readily ascertainable by other means—including from the Key Customer itself. ECF No. 39 at 9. The Court disagrees.

Plaintiff has identified types of information routinely protected as trade secrets in Texas. *See MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444-RP, 2019 WL 7761445, at *12 (W.D. Tex. July 29, 2019) ("Texas courts have recognized customer lists, client information, customer preferences, and buyer contacts as examples of trade secrets to the extent they are not 'readily ascertainable.'"); *BarZ Adventures Inc. v. Patrick*, No. 4-20-CV-299, 2023 WL 2478550, at *5 (E.D. Tex. Mar. 13, 2023) (citing "customer lists, pricing information, marketing strategies, and customer information" as examples of trade secrets "when a business puts in efforts to keep certain materials secret").

Plaintiff also alleges that it "spent much time over many years and invested significant sums" to develop and maintain these alleged trade secrets. ECF No. 35 ¶ 64. Further, Plaintiff allegedly undertook extensive measures to keep this information secret, including implementing internal controls that prevent employees from downloading or printing certain information,

requiring "constantly changing" passwords, and mandating employees to sign employment contracts with confidentiality provisions. *Id.* ¶¶ 19, 65. The Individual Defendants' employment contracts required them to acknowledge that "TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information are proprietary trade secrets with significant economic value, are compiled through a substantial Investment of time and money by TQL, and are not common knowledge throughout the industry." *Id.* ¶ 62; ECF Nos. 36-1, 36-2, 36-3 at 2.

In the context of the surrounding circumstances, Plaintiff sufficiently alleged the existence of its trade secrets. *Nova Consulting*, 290 F. App'x at 734–35 (internal quotations omitted).

### b. Misappropriation of the Trade Secret

A defendant can be liable for misappropriation of trade secrets if, at the time of the unauthorized use or disclosure of the information, the defendant knew that it obtained the information under circumstances giving rise to a duty to maintain its secrecy. TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii)(b); *Lifesize, Inc. v. Chimene,* No. 16-CV-1109-RP, 2017 WL 1532609, at *9 (W.D. Tex. Apr. 26, 2017) ("[T]he plaintiff may instead show that the defendant permissibly acquired the information within a relationship of confidence and later disclosed or used the information in violation of that confidence."). This is the case here.

Defendants assert that the SAC fails to establish that "Defendant Gonzalez and Defendant Cardenas misappropriated the alleged trade secrets."[8] ECF No. 39 at 14. However, Plaintiff sufficiently alleges that Defendants Gonzalez and Cardenas (i) signed employment agreements

---

[8] Defendants appear to concede that the "specific allegations about Defendants Medellin and PGL allegedly using the Key Customer Information" are sufficient to plead a trade secrets misappropriation claim. The Court agrees. *See Clean Energy v. Trillium Transp. Fuels LLC, No. CV H-19-244,* 2019 WL 1522521, at *3 (S.D. Tex. Mar. 22, 2019), *report and recommendation adopted,* No. H19244, 2019 WL 1515123 (S.D. Tex. Apr. 8, 2019) (finding an employer's trade secret misappropriation under an identical trade secrets statute where complaint alleged new employer "used" former employer's trade secrets to solicit business).

requiring them to keep confidential and not disclose proprietary information that they learned while working at TQL and (ii) through their employment with PGL, used and disclosed these trade secrets as a "blue print" to recreate TQL's system and solicit TQL's relationships. ECF No. 35 ¶¶ 31, 39, 52, 58, 78, 55; *see Comput. Scis. Corp. v. Tata Consultancy Servs.*, No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *6 (N.D. Tex. Feb. 7, 2020) (finding misappropriation under an identical trade secrets statute adequately pled where plaintiff alleged "facts to support an inference that Defendants were accessing and using confidential, proprietary, and trade secret information" to develop a competing platform). Contrary to Defendants' claims, such allegations are more specific than simply asserting that Defendants Gonzalez and Cardenas will "inevitably use confidential or trade secret information because they are working in the same roles at PGL." ECF No. 39 at 15.

The Court also finds Defendants' reliance on *Phazr, Inc. v. Ramakrishna*, 3:19-CV-01188-X, 2019 WL 5578578 (N.D. Tex. Oct. 28, 2019) and *DISA Global Sols., Inc. v. ASAP Drug Sols., Inc.*, No. 4:18-CV2849, 2019 WL 13030151 (S.D. Tex. Sept. 27, 2019) unavailing. In *Phazar*, the court granted defendant's motion to dismiss plaintiff's trade secret misappropriation claim under an analogous statute for the unsurprising reason that plaintiff "merely recit[ed] the elements of [DTSA] claim" and "only offer[ed] legal conclusions." *Phazr*, 2019 WL 5578578, at *4. For the reasons stated above, Plaintiff has clearly done more than articulate the elements of the TUTSA statute here. Likewise, in *DISA Global Sols.*, the court concluded that plaintiff's complaint failed to allege facts indicating that employee defendants "shared" or "used" the former employer's trade secrets while working for their new employer. *DISA Global Sols.*, 2019 WL 13030151, at *4. Here, Plaintiff specifically alleges that TQL's trade secrets served as the "blue print" for recreating

TQL's services at PGL and the basis for soliciting motor carriers away from TQL. ECF No. 35 ¶¶ 57–58.

For the above reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's misappropriation of trade secrets claim against all Defendants (Count 4).

### 3. Tortious interference with existing and prospective relationships against all Defendants (Count 5)

Defendants assert that Plaintiff's claim for tortious interference with "existing and prospective relationships,"[9] fails to state a cause of action under Texas law and is otherwise preempted by TUTSA. ECF No. 39 at 16–19. The Courts agrees.

In order to prove tortious interference with a prospective relationship, Plaintiff must demonstrate:

> (1) a reasonable probability the parties would have entered into a contractual relationship; (2) an 'independently tortious or unlawful' act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or knew that the interference was certain, or substantially certain, to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Mattei v. Int'l Conf. of Funeral Serv. Examining Bds.*, No. 15-CV-139 RP, 2015 WL 5125799, at *7 (W.D. Tex. Sept. 1, 2015). To establish an "independently tortious or unlawful act," Plaintiff must plead how "defendant's conduct would be actionable under a recognized tort." *Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. 4:14–0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015). Plaintiff need not prevail on—or even assert a claim for—the underlying tort, but rather must establish that the defendant's conduct would be actionable. *Id.*

---

[9] The Texas Supreme Court only recognizes two types of tortious interference claims: "one based on interference with an existing contract and one based on interference with a prospective business relationship." *Wesdem v. Ill. Tool Works*, No. SA-20-CV-00987-OLG, 2021 WL 4053414, at *8 (W.D. Tex. Mar. 12, 2021). To the extent Plaintiff seeks to assert a separate claim for tortious interference with an *existing* business relationship, it must be dismissed under Texas law. *Id.*

Although Texas law recognizes claims for misappropriation of trade secrets, TUTSA's preemption provision precludes Plaintiff from predicating its claim for tortious interference on the misappropriation of its trade secrets. In relevant part, TUTSA's pre-emption section provides:

> a) Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret. (b) This chapter does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

TEX. CIV. PRAC. & REM. CODE § 134A.007. The underlying purpose of TUTSA's preemption provision is to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753, at *2 (W.D. Tex. Jan. 5, 2018) (quoting *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.)). Consequently, "district courts in this circuit have found that to the extent a plaintiff's tort claim is premised on the same facts as its claim for misappropriation, it is preempted." *UOP LLC v. Exterran Energy Sols., L.P.*, No. 20-CV-233-DC, 2021 WL 4096560, at *6 (W.D. Tex. Aug. 26, 2021). To avoid preemption, a plaintiff must be able to demonstrate that the claim is based on facts unrelated to the misappropriation of the trade secret. *See 360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *6–8 (W.D. Tex. Mar. 2, 2016).

Here, Plaintiff relies on the same set of factual allegations for both its trade secrets misappropriation claim under TUTSA and its tortious interference with prospective relationships claim. Specifically, the SAC alleges that PGL "decided to bring the work performed by TQL for the Key Customer in-house," but, because it lacked the "manpower, knowledge, or relationships

16

to do so successfully," PGL "just hired away key men from the TQL program and recreated it at PGL[.]" ECF No. 35 ¶ 55. After PGL hired the Individual Defendants, they "directly called on and solicited the key motor carriers that serviced the Key Customer account through TQL" and the Defendants "collectively engaged at least three of TQL's key motor carrier relationships to convert the business previously provided through TQL to in-house at PGL." *Id.* ¶ 57. The SAC makes clear that Medellin "was able to facilitate these solicitations and sell these relationships on moving to PGL based on the vast amount of information he retained and declined to return to TQL after his departure," including the information identified by Plaintiff as protected trade secrets. *Id.* ¶ 58. Plaintiff asserts that the "confidential and sensitive" information obtained during the Individual Defendants' employment at TQL provided them with a "blue print to recreate the TQL model at PGL on an accelerated basis." *Id.* In short, Plaintiff alleges that "PGL, Medellin, Cardenas and Gonzalez have all improperly benefitted from their use of TQL's information." *Id.* ¶ 62.

In other words, the SAC makes plain that the Defendants' alleged interference with Plaintiff's business relationships was achieved by misappropriating Plaintiff's trade secrets. Because of TUTSA's preemption provision, Plaintiff's cannot rely on its trade-secret allegations as the basis its tortious interference claims. *See Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*, No. H-20-3768, 2022 WL 1103078, at *7 (S.D. Tex. Apr. 13, 2022) (finding tortious interference with prospective business relations claim pre-empted where the claims "based on the same underlying facts as its claim under [TUTSA]"); *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, No. H-19-2953, 2020 WL 6748049, at *13 (S.D. Tex. Nov. 17, 2020) ("Most district courts in Texas hold that if a plaintiff's tort claim is premised on the same factual allegations as its claim for trade secret misappropriation, the claim is preempted by TUTSA.").

The SAC fails to identify any other tortious conduct that could support a claim for tortious interference. Plaintiff asserts that Defendants "used improper means" to cause the severance of TQL's former contractual relationships with shippers and motor carriers "by soliciting TQL customers, and by diverting TQL's motor carrier resources and/or utilizing motor carriers directly to cut out TQL from transactions with the Key Customer." ECF No. 35 ¶¶ 13, 72. Plaintiff alleges that Defendants "knew and know that TQL had a reasonable expectation of continuing such business relations," but still tortiously interfered, causing monetary damages. *Id.* ¶ 72.

Although pre-existing business relationships, such as Plaintiff's former contracts with shippers and carriers, can establish a reasonable probability of prospective contractual relations, *N. Cypress Med. Ctr. Operating Co. v. Gallagher Benefit Servs.*, No. 4:11-cv-00685, 2012 WL 2870639, at *7 (S.D. Tex. July 11, 2012), Plaintiff's vague assertion that Defendants "used, threatened to use, or will inevitably use improper means to damage, interfere with, or cause the severance of such relations" fails to identify a specific tort. ECF No. 35 ¶ 72.

Accordingly, as pled in the SAC, Plaintiff's claim for tortious interference with prospective relationships claim must be **DISMISSED** as preempted by TUTSA.[10]

### 4. Tortious interference with existing contracts against PGL (Count 6)

To prevail under Texas law, a party claiming tortious interference with existing contracts must show: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred." *C&K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at

---

[10] Defendants argue that Plaintiff's breach-of-contract claims against Individual Defendants for violating the confidentiality covenants must also be dismissed as preempted by TUTSA. ECF No. 39 at 6. Courts in this district have previously concluded, "Plainly, a claim for breach of contract qualifies as a contractual remedy and is not preempted by TUTSA." *CAE Integrated, LLC v. Moov Techs. Inc.*, No. 1:21-CV-377-RP, 2022 WL 4476784, at *5 n. 3 (W.D. Tex. Sept. 26, 2022).

*6 (N.D. Tex, Jan. 20, 2021) (citing *Unicorn Glob., Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 547 (N.D. Tex. 2020) (applying Texas law)).

Plaintiff has adequately pled that PGL tortiously interfered with (i) the Individual Defendants' employment contracts and (ii) Plaintiff's contractual relationships with motor carriers. These claims must nonetheless be dismissed because they rely on the same factual allegations underpinning Plaintiff's claim for misappropriation of trade secrets claim and are thus preempted by TUTSA.

First, Plaintiff alleges PGL willfully and intentionally interfered with Individual Defendants' employment contracts, which allegedly "prohibited employment with PGL," barred transfer of "information and relationships to PGL," and forbade "the use of TQL's information" for PGL's benefit. ECF No. 35 ¶ 78. PGL then caused the breach by "inducing [the Individual Defendants] to leave TQL and go to work for PGL in violation of their agreements with TQL." *Id.* ¶ 79. As a result, TQL suffered economic damage *Id.* ¶¶ 79, 81. At this stage, these allegations suffice to plead tortious interference with existing contracts. *See Dixie Elec., LLC v. Jarwin*, No. 17-CV-00066, 2018 WL 6252540, at *4 (W.D. Tex. Jan. 29, 2018) (finding that a defendant "induced or caused" a third-party to breach contract as sufficient to establish proximate cause at the motion to dismiss stage). [11]

---

[11] Defendants also advance a number of unpersuasive and premature arguments for dismissal centered on the enforceability of the Non-Compete Provision, including (1) that PGL cannot be held liable for interfering with the Non-Compete because it is unenforceable, and, (2) even if the Non-Compete Provision is enforceable, PGL was justified in its good-faith belief that it was invalid. ECF No. 39 at 5–6.

To be clear, even if the Non-Compete Provision is unenforceable as written, Plaintiff may still be able to recover for PGL's tortious interference with a court-reformed covenant or, given the severability clause in each of the employment contracts, with any of the other Restrictive Covenants. *See Orthoflex, Inc. v. ThermoTek, Inc.,* No. 3:11-CV-0870-D, 2011 WL 5879330, at *1 (N.D. Tex. Nov. 23, 2011) ("The noncompete covenant may be unenforceable as written, but once it is reformed, it can still serve as the basis of [Plaintiff's] tortious interference claim."); *Compass Bank v. Tex. Cmty. Bank,* No. 09-CV-056-AML-CMW, 2010 WL 11506744, at *3 (W.D. Tex. Apr. 26, 2010) ("[I]t is possible for a non-disclosure clause to be valid and able to support a claim for tortious interference while a non-solicitation or non-compete clause is invalid and cannot."), *report and recommendation adopted* 2010 WL 11506745 (W.D. Tex. Sept. 21, 2010).

Second, Plaintiff asserts that PGL interfered with TQL's contracts with motor carriers. ECF No. 35 ¶¶ 57, 80. Plaintiff asserts "TQL has formal contractual relationships with . . . motor carriers that participate in its network." *Id.* ¶ 13. Plaintiff also describes having "developed a network of reliable motor carriers" to service its Mexico Program, identifies the "specific motor carriers used" for this program as an important piece of information unknown to PGL, and describes receiving weekly security reports related to "these specific motor carriers and their activity with the Key Customer." *Id.* ¶¶ 50, 51, 60. Although Plaintiff did not proffer detailed descriptions of the contracts, "the facts alleged are enough from which to reasonably infer the existence of contracts subject to inference." *Wolf v. Cowgirl Tuff Co.*, No. 1:15-CV-1195-RP, 2016 WL 4597638, at *3 (W.D. Tex. Sept. 2, 2016).

Plaintiff further alleges that PGL "willfully and intentionally interfered" with Plaintiff's contracts with motor carriers "by encouraging Medellin, Cardenas, and Gonzalez to shift those relationships to PGL." ECF No. 35 ¶ 80; *Wolf*, 2016 WL 4597638, at *4–5 (finding plaintiff sufficiently pled proximate cause where plaintiffs asserted that defendant contacted third-party and encouraged them to sever ties with plaintiffs). Plaintiff alleges that it suffered monetary damages as a result of PGL using TQL's motor carrier relationships to service the Key Customer. ECF No. 35 ¶ 61. In doing so, Plaintiff has adequately pled the elements of tortious interference with existing contracts.

---

Likewise, as an *affirmative defense*, justification is generally an improper basis for granting a Rule 12(b)(6) motion unless the plaintiff has "pleaded [himself] out of court by admitting to all the elements of the defense." *U.S. Enercorp. Ltd. v. SDC Mont. Bakken Expl. LLC*, 966 F. Supp. 2d 690, 697 (W.D. Tex. 2013); *River Cap. Advisors of N.C. v. FCS Advisors, Inc.*, 551 F. App'x 187, 188 (5th Cir. 2014) (citing *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000)) (recognizing justification as an affirmative defense). Defendants fail to identify—and the Court cannot locate—any facts in the SAC admitting that Defendants had an objectively reasonable belief that its conduct was justified.

Nonetheless, Defendants correctly point out that this claim rests on the same factual allegations as Plaintiff's claim for trade secrets misappropriation against PGL, and it is therefore preempted by TUTSA. Specifically, the SAC asserts a trade secrets misappropriation claim against PGL by alleging, "PGL was aware of the trade secret status and competitive advantage of this information as it hired and transitioned the employees for the express purpose of taking the work TQL performed for the Key Customer so that PGL could provide those services to the Key Customer itself." ECF No. 35 ¶ 62. Likewise, Plaintiff alleges that PGL interfered with the Individual Defendants' employment contracts by "inducing them to leave TQL and go to work for PGL . . .for a purpose prohibited by their agreements with TQL." *Id.* ¶ 79. As discussed, allegations that PGL interfered with TQL's contracts with motor carriers "by encouraging [Individual Defendants] to shift those relationships to PGL in violation of their agreements with TQL" are also predicated on the same factual allegations as articulated by Plaintiff's trade misappropriation claim. *Id.* ¶ 80; *see WeInfuse, LLC v. InfuseFlow, LLC*, No. 3:20-CV-1050-L, 2021 WL 1165132, at *6 (N.D. Tex. Mar. 26, 2021) (dismissing tortious interference with an existing contract and prospective business relations where plaintiff's tort claim "premised on the same facts as its claim for misappropriation of trade secrets").

Accordingly, Plaintiff's claim for tortious interference with existing contracts against PGL is **DISMISSED** as preempted by TUTSA.

## III.   Leave to Amend

In its response brief, Plaintiff seeks leave to file an amended complaint to the extent that the Court concludes that any of its clams should be dismissed. *See* ECF No. 40 at 17–18.

Rule 15(a) applies where a plaintiff has "expressly requested" leave to amend even though its request "was not contained in a properly captioned motion paper." *United States v. Humana*

*Health Plan*, 336 F.3d 375, 387 (5th Cir. 2003). A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. *Id.* (citing FED. R. CIV. P. 7(b) and *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445–46 (9th Cir. 1990)). However, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993); *see Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) ("At the end of their opposition to the motion to dismiss, Appellants stated that they 'should be given an opportunity to amend . . . to further state any claims considered deficient' and 'to plead further' Richard's claims. These statements are insufficient to constitute a request for leave to amend under Rule 15(a).").

To the extent that Plaintiff is able to identify an independent tort that is *not* preempted by TUTSA to support its claims sounding in tortious interference, the Court will entertain a motion for leave to file an amended complaint and review the proposed amended complaint attached to the motion pursuant to Rule 15(a).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims for tortious interference with "existing and prospective" business relationships, tortious interference with existing contracts, and unjust enrichment are **DISMISSED**. Plaintiff's claims for breach of contract and violations of the Texas Uniform Trade Secrets Act remain pending.

It is so **ORDERED**.

**SIGNED** this 2nd day of November, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE